And we'll hear first from Mr. Coleman. Yes, good morning, Your Honor. Ben Coleman for Appellant Sam Solakyan. I'd like to begin where the briefs begin, which is whether the Honest Services Statute applies in the doctor-patient context. And the Supreme Court's recent decision in Prococo has put some meat on the bones of skilling. And Prococo makes it clear that to determine whether an honest services theory is viable, you have to look to the core of pre-McNally honest services precedent. And Prococo goes on to say that even if there is some or a smattering of pre-McNally precedent, that is not sufficient to sustain an honest services theory. In this case, the government hasn't identified a single, single pre-McNally case that applied, sustained a conviction, an honest services conviction in the doctor-patient context. We review this claim for plain error, don't we, Counsel? No, Your Honor. This is as well-preserved as the claim can be. First of all, Rule 29 is a viable vehicle to entertain this claim. The question is whether the theory of honest services fraud is a viable theory that's been sustained. But the specific question that you're presenting here is whether an honest services conviction could occur in the context of a patient-doctor-patient relationship. And as I understand it, this was not raised until post-trial briefing. Well, the post-trial briefing makes it sufficient. There were pre-trial motions to dismiss that were made. But not as to this particular claim. The pre-trial, in fact, I thought one of your instructions was to require one of the co-conspirators, the doctor, to prove that he had a fiduciary relationship with his patient. So it seemed as if you were accepting that premise up through trial and then switched gears in post-trial. Well, I don't think so. There was Rule 29 motions made during the trial. The judge, when responding to the pre-trial motion, said, I'm denying it for now. I'll reconsider everything after the trial. We then filed a Rule 29 motion specifically raising this claim. But you're raising a legal issue that the doctor-patient relationship doesn't qualify. And if you wanted that legal limitation, it had to go into the instructions. And if it didn't go into the instructions, then it's reviewed for plain error. And I agree that under Rule 29, post-trial, even if it didn't go in the instructions, you get to raise it on plain error and say, hey, there's actually another element here. But it is plain error, it seems to me, if it didn't go in the instructions and it's a legal rule you're asking for. Well, the legal rule is the convictions are invalid. I mean, the same thing happened in Kelly. The Supreme Court found that Rule 29 was a valid basis to sustain a legal argument that there was no property fraud in that case. In Yates, which is a Supreme Court case, the Supreme Court held that whether the legal definition under the statute was satisfied could be raised in a Rule 29 motion. I mean, the court cannot sustain an invalid conviction, you know, if Rule 29 is the vehicle to do it. That's, we cited the recent case out of New York where it relied on Rule 29. And you have to remember that under the trial. I mean, this, and Prococo now makes it very clear. So even if the court were somehow to say that plain error review doesn't apply, which we strongly disagree with. Prococo says that honest services fraud cannot involve a patient-physician relationship? It says that honest services fraud has to be rooted in the core of pre-McNally precedent. Right. And this, and zooming back for a second, this is a case about bribery and kickback schemes, which Skilling said is that core pre-McNally concern. Why doesn't that bring in, and Skilling also recognized that these fraud prosecutions can happen in the private context as well. Why don't, why doesn't the combination of those two things bring this type of prosecution within the fold of 1346? Because what Prococo says is that to determine whether there is the legally cognizable fiduciary relationship for purposes of the honest services statute, you have to look to the core of pre-McNally precedent. And so even if there is bribery or kickback, if there is not a recognized fiduciary relationship for purposes of honest services fraud, then, then the theory is invalid. But I mean, just that I understand, are you suggesting that Prococo says that the only types of prosecutions you can have are ones that existed pre-McNally? Not, not just the general context of bribery and kickback in a private setting, but you have to find a pre-McNally doctor-patient fraud claim in order to bring that now? Not only do you have to find a such case, you have to find a core of cases. That, that's what, that's what Prococo says. So even if they could come up with one, which they can't, you have to come up with a core of them. And they've failed dramatically in that regard. And this is, I mean, the, the Supreme Court, starting back in 1920s, reversed the conviction of a doctor on, in a federal, in a federal criminal case, saying that the federal government does not have the power to regulate the doctor-patient relationship. That is, it's a theme that's existed for a century now. And the U.S. Supreme Court has continued to say that we're going to read this statute narrowly. We're going to, there's some justices that think the statute's just unconstitutionally vague. But the, in order to avoid that problem, the Supreme Court has made it clear that we're not going to extend this to every conceivable relationship that the federal government thinks they want to prosecute in a particular case. It has to be rooted, the statute says, the intangible right to honest services, which means that it has to be rooted in the core of pre-McNally precedent. So for, for that reason alone, and we would, again, urge the court that it's, it's not plain error review. There was a pretrial motion to dismiss that was made, where it, the contentions were that this was converting state law matter into a federal felony. The contentions were that it, it did, it was inconsistent with skilling. The contention was that there wasn't an adequate fiduciary relationship for purposes of 1346. All these arguments were made. And even if our argument is somewhat, is a little bit different than the arguments that were made, this court has said that that is sufficiently, that is a sufficient pretrial motion to preserve this type of issue. The arguments can, it's the question, has the claim been made? The arguments can change a little bit. And obviously when we have a new Supreme Court case that has come out in the middle of the appeal, I mean, we're going to address this, the U.S. Supreme Court case and what the U.S. Supreme Court says about honest services. So for that reason alone, we think the honest services are defective. I would like to next move to whether the indictment sufficiently alleged the willfully mens rea for purposes of the healthcare fraud prong of count one. And there really could be little question that the indictment didn't allege a willfully mens rea. The government is contending that there wasn't an adequate pretrial motion to dismiss again, but there was a specific pretrial motion that was made, I think it was more than 16 months before the trial started, uh, arguing that count one did not allege the willfully mens rea for purposes of healthcare fraud. But again, you know this, are you referring to that supplemental brief that that was filed? Uh, that was a supplemental brief that was filed in relation to willfulness for honest services fraud. It was not discussing healthcare fraud at the time. It did, Your Honor. It did discuss healthcare fraud. We're in the record. Uh, and I'll kick it up for you. Okay. And, um, it was very clear that it discussed healthcare fraud and at the, at the motion hearing, uh, defense counsel, uh, specifically argued, uh, the, the 1347 prong of count one. Uh, but let me just get you the sites. I don't see it at SCR 74 to 79, but I, my, my understanding was that it was about honest services fraud and the willfulness. It was, uh, and when I, when I come back, I, I'll, I'll, I'll kick it up so I can read you the actual language. But, uh, counsel was very clear that this applied to both. Uh, and it was very specific that the willfully mens rea for 1347 was not alleged. Um, so, so let me ask you this, that, you know, we have case law low citing Wong Thai that says that if you're, if you're adequately alleging the conspiracy itself, you don't have to be as specific about the, uh, offense. That's the object of the conspiracy as you might for a substance of offense. Why in the context of the indictment, is that not enough to, uh, see that it was discussing willfulness or bad conduct, even if the word willfully wasn't in the indictment? Uh, this court has said that Wong Thai is really about the factual allegations for a conspiracy, not about the elements of the offense. Um, and then there's a case called King. It's a ninth circuit case where this court reversed, uh, a conspiracy, uh, conviction because the indictment did not allege the elements of the, all the elements of the substantive offense. So this court has, has said that Wong Thai does not control the situation of whether the elements of the object offense have been a willfully mens rea. Uh, the Supreme Court has stated that the indictments have to allege all the elements of the offense specifically, um, that there cannot, you cannot infer elements of the offense. Oh, I mean, just so that I clarify, it's not that the element willfully isn't supposed to be there. Of course it is, but that one can infer, not infer that one can see from the reading of the indictment as a whole, that willfulness was being alleged, even if the word wasn't used. That's, that's how I read the cases. And why is that? Why does the indictment not fit that pattern in your mind? And those cases that you're referring to involve untimely challenges. They're not pretrial challenges to the indictment. They're different standards. If, if the motion is made post trial, then yes, you can look at the indictment liberally and infer that based on the allegations in the indictment that, uh, the, the element was proven. But if there is a pretrial challenge that's made, then you have to look at the indictment strictly. And I'll give the example of Omer, which is a nine circuit case. Omer, the indictment was a fraud indictment and it alleged a check hiding scheme, but the indictment didn't allege materiality. Now, of course, this court could have said, well, it's a check hiding scheme. Obviously, uh, there was materiality there, but it didn't. This court said, no, it didn't. The indictment did not allege materiality and therefore it's invalid. Um, and so it's, there are different standards depending on whether it's a pretrial motion that's made or post trial motion. So, uh, for that reason, we think that the honest service, uh, the, uh, healthcare fraud prong should be reversed. So just so that I understand on this point about the absence of willfully and the indictment, you're making this argument with respect to the, um, presence of the healthcare, uh, fraud prong of the conspiracy claim. Correct. And, and so not the healthcare counts separately. There are no substantive healthcare fraud counts. All the substantive counts are honest services counts. Um, in our, in our, the initial argument in our other arguments in a brief that I was talking about applies to those counts. Uh, there's the only healthcare fraud count, uh, charge is in count one and it's part of the conspiracy. Um, those were the two main points I wanted to address. If the court didn't have any questions, I would save the remaining time for rebuttal on SCR 78. Thus, this is from your, from the supplemental brief. Thus for a section 1346 violation, the government must prove that Mr. Solakian knew that his conduct was unlawful. The requirement makes sense because the, uh, healthcare fraud statute, which appears right next to the honest services fraud statute in chapter 63 also requires a willfully mens rea. So it's actually discussing the healthcare fraud statute, but only as a comparison to the one that, to the argument that you're making that 1346 requires willfully. I'm, I'm just not seeing you having raised this argument pretrial, but you, you, you'll come back after on rebuttal. I'm looking at the same document. I, that portion relates to accounts two through 12 where you were challenging, you know, making the point with respect to, uh, the 1346 violation, but it's on the next page 79 where it says that it charges with two objects, honest services fraud under 1346 healthcare fraud under 1347. And then at line 13, it says the conspiracy count in the indictment does not allege the requisite willfully corruptly mens rea and is tainted by the deficient mens rea allegations as to those substantive offenses that stand as the objects of the conspiracy. That does seem to say drawing on the fact that you've said it's in both that the argument seems to me by that sentence to be there. Yes, that's correct. Your honor. And also, but what do we do with the fact that this was stricken, wasn't it? It wasn't. Does that mean that you still don't get out of forfeiture because there are two points I want to make about that. And I apologize for this. In my brief, I cited ER six 47 to show that the doc, that it wasn't stricken. It actually should have been the government supplemental excerpts at six 47. What happens at the end of that hearing is that defense counsel says, um, your honor, you had said you were going to strike the brief, but you ruled on the merits. So therefore, isn't it essentially moot and shouldn't, you know, the argument still stand? And the court says, yes, I agree. I ruled on the merits. That's that supplemental excerpts six 47. In addition, in the post trial motions, the government conceded, I mean, they've waived this argument that it wasn't preserved. The government conceded that there was an adequate pretrial motion made. And when the district court ruled, the district court also recognized that there was an adequate pretrial motion made. Everybody was on the same page that this argument was adequately presented pretrial. The government has waived their claim now. They explicitly conceded in post trial motions that it was adequately raised pretrial. So there's ample parts of the record where the motion was made pretrial. And even if somehow the argument and nobody struck the oral arguments, which appear at two 43 to two to two 44 of the excerpts of record where defense counsel was arguing that the willfully mens rea was not alleged for 13 47. No one struck those arguments at all. So I mean, they were orally raised as well, and there was no request to strike those arguments either. So this was raised orally. It was raised in writing. It was raised more than well over a year before the trial that everybody had noticed the government. If they could have just gone and superseded the indictment, if they could and alleged the willfully mens rea, but they sat on their hands. Everybody had notice of this problem with the indictment. I'd say the remaining time. All right. Thank you. We'll hear now from Mr Schleifer. Did I pronounce that correctly? Or is it Schleifer? Mr Schleifer. Thank you, Your Honor. You're in the minority of judges who do get that right, so I appreciate that very much. Good morning, Your Honors, and may it please the Court, Adam Schleifer for the United States. If I could, I'd like to take counsel's arguments in reverse order. So going to the question whether this absence of willfully was preserved or is preserved properly, I would start by noting that, yes, there was a brief raised, and as we say in our brief, that was the fourth supplemental brief raised, and the Court took rightful exception to the serial briefing here. And what the Court actually says at SER 646, so that's in Volume 3, the Court actually says, I will grant the motion to strike, but that doesn't mean you can't re-raise your constitutional concerns post-trial. So I just want to be clear. She granted the motion to strike, and as our briefing points out, the Court granted that motion to strike because defendant had tried to raise a number of serial claims, and the Court said that was entirely improper and said that it is just simply not appropriate to raise whatever claim you like whenever you want. You've had adequate time to brief this, and you didn't. I will strike this argument. So as to the question whether the argument, the brief was stricken in its entirety, it was. And for striking of a brief to mean anything, for a district court to be able to manage its docket, it has to mean that the argument is a nullity for purposes of Ninth Circuit review. But then why didn't the district court address the merits of that argument anyway? I mean, does it somehow impliedly undo the motion? It seems as if the Court forgot that it struck the brief. What do we make of that? Yes, Your Honor. So as to that, I agree that both the government and the Court lost sight at the post-trial briefing phase of the fact that this argument had been stricken. That cannot be a waiver of waiver, so to speak, as defense would suggest, for a few reasons. One, Rule 12 exists for a reason. And in fact, we argue that this argument is entirely waived or at best, of course, forfeited. But the reason Rule 12 exists is because when one makes legal threshold arguments, for example, the indictment is facially deficient, or as to, as I hope we will get to in a second, the question whether 1346 prohibits or permits on a services fraud. These are threshold questions that the rules under Rule 12 require to be made at the Rule 12 stage. So as to that, even if there were some question here, which there isn't, whether they could have been re-raised at the Rule 29 phase, the Court did take them up. And both the Court and the government, many years later, in passing an oral argument, lost sight of the fact that the argument had been waived and forfeited. But that is not the same thing to say that for purposes of Ninth Circuit review, one should sort of revive the failure to raise at the Rule 12 phase. In other words, if the question were whether to address this at Rule 29 on appeal, that would be a different matter. But I want to go back also to... Before you move on to the other thing, if we don't agree with you that this was untimely, in other words, how do we construe the indictment then? Do we have to construe it strictly? And if it doesn't use the word willfully, are we in DuBois land where we reverse the conviction? I believe we are. So let me take that in two pieces. I believe that if the Court agrees that this brief was stricken, it is a waiver issue, not only a forfeiture issue. That's the first argument. The second point would be, if the Court elects to review it, it must be only unplanned. Waiver is intentional relinquishment of a right. Forfeiture is failure to follow a procedural rule for raising it. How does it go from failure to follow the procedural rules for raising it into intentional relinquishment? So as to waiver, there is precedent that when a court... Excuse me. When a defendant fails to raise at the Rule 12 stage, arguments that must be raised under Rule 12b, it is not only a forfeiture, but it is a waiver. Precedents for that include United States v. Ortiz, 776 F. 3rd at 1044 Note 3. There are others. And in fact, Rule 12 itself, we believe, makes that clear. But Rule 12 has a particularly harsh rule for forfeiture, which is you have to show good cause. And we held in Ghanem that that bars plain error review. You have to go through the good cause. But it's still a forfeiture rule. It's got a unique sort of box around it, but it's not intentional relinquishment. Okay. So taking... Yes, Your Honor. Taking that point, we would say if the court were to review this, it would be only for plain error under CASI. And as the court notes, other precedents. It would be a very narrow and non-searching review. But if you're right that this is a Rule 12 problem, we've said, and I'm pretty sure we've said in the Ghanem case, that the standard is good cause. And if you don't show good cause, you cannot invoke plain error. And we believe that that applies here. And there was a... And the reason why... The court, in fact, found that there was a failure to show good cause here by saying, defendant, you've had four chances to raise Rule 12 briefs, and you have not raised this argument. And here you are at the 11th hour. But then she said you could raise it post-trial. And then when it was raised post-trial, she decided it. Except, respectfully, that's not what happened. So if the court looks to SCR 646, what the statute basically says is, quote, I will grant the government's motion to strike, which is 84. That's the docket entry. But that doesn't mean you can't re-raise your constitutional concerns post-trial. So what happened here, and this is sort of a procedural sloppiness can make for a messy record, but it's clear here, the defendant had put in four briefs, in serial, not adhering to the court's instructions. The court made many findings throughout the course of the pretrial and trial proceedings that the court was not taking well the defendant's habit of filing many briefs outside of the court's rules and outside of the deadlines. And so here, what the court is saying is, you've sent in delusive briefs, some of them untimely and improperly lodged, and I am not going to prevent you from raising your, quote, constitutional concerns post-trial. That was a different issue. That was some of the honest services arguments the defendant was making. So here at 646, the court is clear that she is striking the entirety of this argument as to willfully. But even taking that argument, I would point the court to ER 74, where the defendant titles this brief in which he now claims he's raised and preserved this issue as a, quote, supplemental brief in support of motion to dismiss honest services fraud allegations, counts 1 through 12. That simply doesn't include object 2 of the conspiracy, which is the health care fraud allegation. But I read the language from page 79. It clearly does. I mean, he's drawing the distinction in the substantive discussion about counts 2 through 12 about how willfulness is in 1347 and, you know, also should be in 1346, and then turns to the conspiracy count 1 on the last page, 79, and says that it's tainted because of the deficient mens rea allegations as to the substantive offenses, plural, that stand as the object of the conspiracy, and of the conspiracy. So I don't understand how it's not there. I mean, I understand the argument this got stricken, but if it's not stricken, it's it's there respectfully. I would read that given the title of the brief and the final sentence for all of these reasons and those stated in the original briefing, Mr. Slotkin asked the court asked that the court dismiss all honest services counts of the indictment. He doesn't say dismiss the health care fraud count, so he titles it as please dismiss honest services. He ends his brief and says please dismiss the honest services. There is a garbled sentence in the middle of a page. It's not garbled. You want to replace it by striking out the deficient mens rea allegations as to the substantive offenses and change it to the deficient mens rea allegations as to the health care object, and that's not what it says. It says the substantive offenses. I read the substantive offenses to be counts 2 through 12, but if the court disagrees and reads that to be substantive offenses and then puts more emphasis on. In other words, there is no. So you're saying the substantive offenses is not objects, but actually the non conspiracy charges in 2 through 12. Exactly. You're honest. And so perhaps that's wrong. But given the title of the brief, given the prayer for relief and the fact that they're talking about substantive offenses, it would be straining, I think, to read this as a motion to dismiss the health care fraud object of count one. I don't think that's the best or fairest reading of this, but going back to Judge Sanchez's question, which is what land are we in? I believe we're in a WAD land, and I believe a WAD stands for two different things here. The first thing a WAD stands for is that when there is a failure properly to preserve and raise an argument at Rule 12, we are in a less searching review than in Dubot. And we then look to say, what is the fair inference from the indictment? And I think it is an overwhelmingly fair inference for the reasons we cite in our brief, that we allege that the defendant was hiding what he was doing, was intending to violate the sections 139, et cetera, of the California labor law, and that he was engaging in sham services agreements to obfuscate the nature of this criminality. And so for those reasons, as the court found explicitly, there was just simply no doubt that he understood. In fact, what the court would say, I want to point this out, the district court found at 1 ER 84, that defendant, quote, cannot argue with a straight face that the concept of willfulness wasn't adequately alleged and clear to him. And she cited a WAD there as well. So I believe that we are in a WAD land and under a WAD. This is not a close case, respectfully. I also would say, if the court were to disagree, one, that the argument was entirely waived or forfeited, and instead believes that this argument were adequately preserved for purposes of sort of full-throated, almost de novo review, I would say that a WAD can be read to say two different things. What a WAD says is, this case is not like Debeau, one, because this wasn't adequately preserved here, and two, because the inference of willfulness was just patently obvious. And I believe that it is a fair reading of a WAD to say those are two disjunctive bases for affirmance in that case and here. So in other words, we do not concede, Judge Sanchez, that if the argument were perfectly preserved, that we would necessarily lose under Debeau, because we believe a WAD stands for the proposition that where an allegation of willfulness is as strongly inferable as it is here, that the indictment suffices nonetheless. And I think there's a reason we should take a pause and think about why that's the case. Can I, before you spend more time on this, I do want you to devote some time to the Pre-McNally issue and whether physician-patient cases can be encompassed under precedent. Yes, thank you. So first, again, we believe this argument, too, was inadequately preserved and forfeited for the reasons that the panel identified. In the many briefings and arguments and claims raised pre-trial, there were claims such as, Dr. Riggler doesn't have a fiduciary duty. But never once did the defendant say, no doctor-patient relationship can adequately come within the ambit of 1346. That just wasn't raised. And so that's not preserved here. But I want to say a few things about that. Defendant then says, well, anyway, you can just get there at Rule 29, look at the Kelly case. What defendant omits from that argument is that the Kelly case did raise their argument in that Bridgegate case at the Rule 12 stage, and that's at 909 F3rd 560. So I think Kelly does not support the argument that one can simply fail to raise a threshold question. What is the ambit of 1346? Kelly does not support that. And in fact, in the Third Circuit, Kelly addressed the argument first at the Rule 12 phase because it was raised there. But more important as the substance, whatever standard of review exists, let me take that argument in a few places. First of all, defendant's argument is squarely inconsistent with Milovanovich because in Milovanovich, this court held that a licensing exam for commercial truck drivers and the proctor administering that exam owes a duty of honest services to the state. And I would challenge defendant to find one pre-McNally case in which a truck driving licensing proctor was held to have violated a duty of honest services pre-McNally. It doesn't exist. And that is not a bar to prosecution under 1346 because 1346 and the McNally-Skilling framework, it doesn't say find me a truck driving exam proctor, find me a surgeon who does leg surgery. That's not the level of generality at which we proceed. We say, is there the triangular structure that Skilling identifies, which is, quote, a fraudulent scheme to deprive another of honest services through bribes or kickbacks supplied by a third party who has not been deceived. This is what all of the case law says, including Prococo, which quotes that analysis, Prococo, which defendant claims sort of would have changed things if they had only known about it at trial. Prococo endorses the Skilling triangle, which is exactly the nature of the allegations here. All Prococo says is a jury instruction talking about how much power a private citizen has vis-a-vis the government is too vague for argument defendants making here, and it simply doesn't support his argument. But more important again, defendant is asking this court to ignore and overrule Milovanovich, which says a fiduciary duty need not be formal, and even a truck driving licensing proctor was held to be a fiduciary there. More important, I think, the defendant is also asking this court to create a circuit split with Nyack in the Seventh Circuit and Simon in the First Circuit because it's simply well the splits there, Jane and the Eighth Circuit went in a different direction. So it's, I don't know that, you know, we wouldn't be, we would be adding to it one way or the other either way, wouldn't we? Respectfully, I disagree with that for the following reason. Jane is a pre-Skilling case, and as Nyack held, it's dubious in light of Skilling. And Nyack also points out the sort of subsidiary arguments that it just simply makes no sense from a statutory perspective to say that a statute that prohibits the violation of the intangible right to honest services requires allegations and proof of harm, which by the way, we alleged and proved here, or that somehow the structure of the kind of physician-patient relationship vis-a-vis a third party paying bribes and kickbacks, Nyack addressed this and said, Jane was wrong, Jane makes no sense, it doesn't make sense in light of the statute, and it doesn't make sense in light of Skilling. And Simon is to the same effect. So I think Jane being a pre-Skilling case, it is displaced by Skilling, and that's what Nyack observed. So right now, I think there is no, there is not a circuit split here, but even were there a circuit split, it would be. Can I ask, is there any post-Skilling case that either says something about the, no, I guess Nyack is, about the need for actual harm or economic harm? You know, Milovanovich adopted this materiality test, and at least in the case of public cases, said you don't need a showing of economic harm. Are there any circuits that have said you do need it in a private context? Well, this circuit, Williams is still good law, which says the public-private dichotomy, first of all, we believe this is a public harm case, because the healthcare program here is public, as the PSR and the court found. But, so I think Williams would be, would bar defendant's argument here, 441F3rd722 in this circuit. But again, I think, Your Honor, you recognize Nyack itself, post-Skilling, explicitly says, quote, it is contradictory to require the government to show actual or intended tangible harm when the crime being prosecuted is defined as causing or intending to cause intangible harm. And Nyack, so Nyack addressed this very issue, very persuasively, and said, it's just outside of the statute. It makes no sense to have Congress say, we're protecting the intangible right to honest services, and then require the government to allege and prove actual harm. But if the court were to disagree, we alleged actual harm by a provision of unnecessary medical services. I don't, I'm not really that persuaded by that argument, because this is about legal error and whether the jury should have been properly instructed on it, not what evidence he presented. But, you know, that's for another issue. If it helps in that regard, the government did argue that there was harm in its closing and or rebuttal by saying it was bad medicine, there was a harm, and there was a foul. But if there is a legal requirement for the court to have instructed as an element of fraud, actual harm, it's not going to be good enough for the government to have raised that as a possibility if the jury doesn't need to find it beyond a reasonable doubt, right? Yes, it is the case, yes, it is true that we did, there was not a jury instruction, because we believe there didn't need to be, that there be an actual harm. I see my time is starting to run low, so I would just like to turn to any other issues so that... Can I ask you to address the restitution point? Yes, Your Honor. The Dadian case, which there was some 28-J... As I read this, the entire 100% of all of the reimbursements for the MRIs were ordered to be subject to restitution without any finding that all of them were bad? No, not the entirety of payments, but the entirety of payments from the nine largest insurers who the government argued were only induced to pay because of an intentionally fraudulent scheme where liens were ginned up for inter rorum. No determination and no deduction for any effort to estimate how many of those may have been medically necessary? That's, it is correct that the court did not discount medical, for medical necessity in the restitution aspect, but as this court has noted in Dadian, restitution and guidelines... You said there isn't a per se equivalence, so you still have to look at whether or not applying the relevant standards, you're in an area of overlap, but there should be... It seems really odd to order restitution for medical services that may have been medically necessary. I mean, I don't see why there wouldn't have to be some kind of effort to estimate. I mean, and again, in restitution, exactitude isn't required, but you just ignore the factor and just pay it all back. That seems successive. The government's argument, which we believe the court accepted, was that given the nature of defendant's scheme, which again was to intentionally order and claim like 15 MRIs for many patients, that the operation of that scheme was to increase the... And there was testimony and evidence in the record to this effect, was to increase the inter rorum value of the settlement and the risk to the insurers, such that the very fraud and its nature to sort of run up the score on the risk side caused insurers to pay out the claims when they otherwise might dispute them, so that there was a dynamic here in terms of the very nature of the scheme, which caused the loss. And from a statutory restitution standpoint, only needing to be a fairly resulting, proximately caused sort of result of the scheme, I believe the court accepted the government's argument that there was something in the nature of this scheme and the way they intentionally claimed 10, 14, 10 to 14 scans per patient, which itself contributed to the sort of judgment of the insurers as a counterparty, let's just pay these out and not risk it, or settle them, but not fight every one. And so there were 14 and 15 for every single one of these that were restituted? No, Your Honor, that is not the case, and so I don't wanna overstate. It's not the case that every patient had 14, but there was... You could have managed this problem by saying, well, this group, this is really bad because it's got 14 to 15. This one's a little bit different. I mean, it could have been, but you just sort of just say, ah, just forget it. We're not gonna sort it out. The government did tranches of analysis, largely also for the double duty of guidelines argument where... Correct. I mean, in the guidelines, I understand it's not per se equivalence, and that's what we've said, but in the guidelines analysis is an effort to sort of, let's try and get at this issue. So in order to say that restitution would be different, you kind of have to show that the applicable legal standard that's relevant on these facts under restitution differs from the relevant legal standard that was applicable under the guidelines. And I'm not sure that I see that the loss rule in the restitution context that's applicable on these facts would disregard the actual necessary value of services that were performed and received to the patient's benefit. And so this hits on an... Your Honor, I think this hits on an interesting point that Dadian also made, which is this. In a sense, we agree, but what happened in the district court was this court had handed down the unpublished Bruce decision. And although the government argued that the district court was not bound by that decision in this case, that it wasn't law of the case and it was an unpublished decision from this court, the court there held that it was bound by the reasoning in Bruce, which is to say, actually, we said that, in fact, all of the 27 some million dollars should have been guidelines loss, and in fact, presented evidence and argument to that effect. The court rejected that argument as to guidelines, but then accepted the argument as to restitution. But because we don't appeal the guidelines argument there, it's simply not on appeal. We don't think it's correct, but since it's not on appeal, we have the same asymmetry we had in Dadian, where we're only talking about the restitution. You were consistent just all across the board, both sides, but because we didn't seek a cross appeal to increase the term of the case, taking the court's lead, we said all of the amount should be loss for guidelines purposes. The court said, well, Groost says that's not the case. And look what happened in Groost when the government refused to come up with a fallback argument. So please come back with a fallback argument or you will have no loss in this case. So the government said, we believe that Groost is not binding and doesn't apply or shouldn't apply in this case, but given the court's holdings to the contrary, we will come up with various other more conservative guidelines arguments for the court to decide from. And then the court essentially accepted some form of those arguments for guidelines, but then accepted the larger amount and wholesale argument for purposes of restitution. And again, I think we would rely on Dadian for saying that given in a context where we are not cross appealing the guidelines, we are in this strange posture, but that is why we're in this posture. Did the court explain why it adopted the government's position for restitution purposes, but not for the guidelines? The court did not give a lengthy analysis of why it accepted. Let me briefly check, Your Honor, the site to the record. I don't have that with me, but in the brief, we cite to the place in the record where the court said it was accepting the argument for restitutionary purposes only. And this is the finding she made. There was a vast overprescription of MRIs in this case. What's the record site? Let me find that quickly. If you have it. You can tell us later as well. If the court likes, we can brief that further or tell you later. But in our brief, we cite to the point where the court found that there was a vast overprescription of MRIs supportive of the assessment of the 27 some million for purposes of restitution. I see my time is over. So unless the court is I do even for I understand the divergence and what may have occurred over that. But even under the statute, you're supposed to look at actual losses by determining the difference between what would have happened in the absence of illegal conduct. Why doesn't that permit some sort of offsetting calculation for the insurers? Even then, some of those under as Judge Collins was pointing out, some of those MRIs may have been medically necessary. And so why take the actual losses full amount without some sort of offsetting for restitution purposes? So it's a strange feature and perhaps a sort of hard hearted one of the workers' compensation field and the nature of uninsured claimants coming on a lean basis. But essentially, the argument that the government raised was we are not in the world of covered patients who are being subjected to suitability review for purposes of claims analysis. In other words, whether this procedure is supported or not, they are all patients. Of course, that was the nature of the scheme. They were finding people who largely couldn't speak English, didn't understand, brought them in and ran up the score with 10 to 15 MRIs. But given that and given that they were uninsured, we argue that it is just simply impossible to imagine a world where these people would have been getting these MRIs had Mr. Salachian and his co-conspirators acted legally because the entire scheme generated, and he had some 90-something percent of the entire lean market of workers' compensation claims. And so the entire market for uninsured, on-lean MRI claims to the workers' compensation system was itself a fraud through and through. So there was simply no way to imagine sort of what would have happened in the normal course when an uninsured person who has a claim that would likely have been denied would come through to Dr. Riggler's chiropractic in San Diego. That just simply wasn't something that was possible in this case, and I think that distinguishes it from many of the Medicare cases that the court often sees where there's sort of a medical necessity discount. This wasn't sort of a small fraud in a broadly functioning market. The defendant fraudulently created this market and had some 90-something percent of the claims that were being generated for purposes of MRI in Southern California. I just have one question out of curiosity. Why is the U.S. Attorney's Office for the Central District prosecuting a case in the Southern District of California? What happened in this case was the former defense attorney for the defendant eventually was appointed to become the U.S. Attorney for San Diego, and the defendant raised a myriad of briefs about how that created an insuperable conflict. And so to address that conflict, the Central District came in on a recusal basis and took over the case from the Southern District of California. We'll hear rebuttal now from Mr. Coleman. Since we went quite a bit over, why don't we put 10 minutes on the clock? If you need a little more, we pepper you with questions we may. Okay. I won't be too strict. I very much appreciate that, Your Honor. What I'll do is I'll start with restitution since that's where we left off. Then I would like to hit honest services, both my Prococo argument and the harm issue, and then talk about the indictment. With respect to restitution, I think Judge Tashima really hit the nail on the head. And the problem in the case is that the court finds $4.4 million in loss. That's what she comes up as her best estimate of the medically unnecessary scans that were paid for. Then imposes almost $28 million in restitution, but provides no explanation as to the difference. The government is now trying to come up with theories as to what could have justified the $24 million differential. But the problem is she didn't explain it. I think the easiest thing is remand the case, and then the judge can explain it. But this court has no basis to affirm such a dramatic differential, $24 million, without an adequate explanation as to why $4.4 million is the, and then $28 million. And I just think that's the easiest way to resolve the issue. Going back to honest services fraud, the government's argument today is that our argument is essentially show us a trucker case, show us this fat case, show us that fat case. That's not the argument. Okay, the millivonic or whatever the, I'm sorry, I'm pronouncing that hired by the state to conduct activity for the state. And there is a body, a pre-McNally precedent that says when somebody is hired by the government to do work, that honest services fraud can apply in that case. I'm not saying you have to show that there was a trucker case. I'm saying there is a framework, there is a viable basis in the pre-McNally precedent to sustain an honest services theory here. The only pre-McNally case that has been cited to this court that has any relevance was cited by us. It was a Fifth Circuit case called Porter. In Porter, the government tried to sustain an honest services theory for doctors. Based on this same theory, the Fifth Circuit rejected it in total, reversed it. And their analysis was, we're not here to evaluate the medical ethics of doctors. And that's the point we're trying to make, is that when you're talking about a, you know, skilling talks about different relationships. It talks about employer, employee, union representative, public official, or someone hired by the public. Those are the core of the pre-McNally precedent. The medical field, the doctor-patient relationship is an enormous field. If that was contemplated under the statute, you would think that there would be at least one or two honest services cases that they could cite before McNally that sustained the theory. And they can't, because there weren't. Because nobody thought that honest services applied to the doctor-patient relationship. But why should we be so concerned about regulation of the physician-patient relationship if we're focused more narrowly on bribery and kickback schemes? So if this were the broader, you know, pre-skilling context where you could reach into lots of different issues and it could infringe on the state regulatory powers, I might see your point. But here, there's a more specific context of just, if doctors are involved in getting kickbacks and getting money in envelopes, we don't need to concern ourselves beyond that with honest services there. Well, I think what the Supreme Court has said, and that recent New York case has said, is that not all bribery and kickbacks implicate a fiduciary duty recognized before McNally under 1346. The only time the Supreme Court has really talked about the doctor-patient relationship vis-a-vis a fiduciary duty is the Pegram case. Again, we're the only one that cited it. And the Supreme Court said the doctor-patient relationship bears little resemblance to a fiduciary relationship. And if you look at Percoco, there were bribes and kickbacks in Percoco. But the Supreme Court said just because of bribes and kickbacks doesn't mean that there isn't a valid honest services theory. It was the same thing in the recent New York case that we cited. That was foreign commercial bribery. There was bribery there. But the court recognized that before McNally, there were no cases in the foreign bribery context, commercial bribery context. And so that just falls beyond the honest services statute. And what the Supreme Court has said again and again is that because the statute is so vague, we need some type of clear statement from Congress, clear. It needs to be clear that this is covered. And it's certainly not clear where they can't identify a single pre-McNally case. And the only pre-McNally case is Porter, which has been cited by us to the court, rejected an honest services theory in the doctor-patient context. So for all those reasons, the statute... We look at this now in the context of how Skilling generalized what it viewed as the pre-McNally case law and generalized the standards so that it's bribery and kickback and fiduciary duty. And you've said it doesn't have to be a specific case. You don't have to... But then you're saying we do have to have a doctor case. That's what I don't... It is saying you don't have to have a trucker case, but you do have to have a doctor case. That's what I'm having trouble with. Okay. So I think the distinctions are this. First of all, Skilling, it didn't just say you have to have a fiduciary duty. It says the fiduciary duty has to be clear. It has to be clear under the pre-McNally precedent that there was a fiduciary duty. And there is the only... What does it say? What does it say? I think it's a footnote. We says there's a comment in footnote 51 where it responds to the dissent on, or I guess it's actually a concurrence, emphasizing the debate in the courts of appeals regarding the source and scope of fiduciary duties and then says the existence of a fiduciary relationship under any definition of that term was usually beyond dispute in bribery and kickback cases and then gives examples, public, official, public, and then employer, employee, and uniofficial union members. But that itself suggests it's illustrative and not exhaustive. And doctor-patient is clearly recognized fiduciary relationship. Well, I guess I disagree that it's a clearly recognized fiduciary relationship. The Supreme Court has said that it bears little resemblance to a fiduciary relationship. I mean, people don't go to doctors to manage their money. They go to doctors for health care. Fiduciary relationship just means you have duties, you stand in a position of trust where you have to act in the best interests of the person with respect to the subject matter of the trust. And a lot of people care a lot more about their physical health than they care about their money. Yeah, I don't think it's just a trusting relationship. I think this court and the Supreme Court, there's lots of trusting relationships out there, but we're not going to expand it to every conceivable trusting relationship, coach-player, teacher-student. You could go on and on with trusting relationships, but it's a well-defined fiduciary relationship under the pre-McNally precedent. And the doctor-patient, one of the reasons why is it's such a major field. I mean, I'm not saying that it's some picky little profession. I mean, the doctor-patient relationship, and I go back to Linder, that the Supreme Court has said, look, the federal government is not in the business of managing the doctor-patient relationship. That's not something we're going to get into. And the one pre-McNally case that they tried to get into it, which was Porter, the Fifth Circuit said the same thing. No, we're just not going there. This is not what's going on. And so the fiduciary relationship, I think, has to be much more economic than this type of relationship. When you're talking about employer-employee, the basis of the relationship is the employee is supposed to make money for the employer. It has a very strict fiduciary or financial component to it. The doctor-patient relationship, as the Supreme Court said, is far afield from that. That's not the basis. That's not the essence of the relationship between the doctor and the patient. We're not going to have doctors, we're not going to require them every time do they have to tell the patient, you know, I get free parking at this hospital. I get free meals at this hospital. Where does the line stop? And the Supreme Court has said, this isn't the federal government's business. This is what the states do. The states set up a regime. And the state could have, there were state statutes that were alleged in the indictment that if they wanted to enforce those state statutes, that's for the state to do. And the Supreme Court says over and over again, you know, they said it in Skilling, they said it in Simonelli and Percoco recently, they said it in Kelly. The federal wire and mail fraud statutes aren't meant to cover everything that is covered by the states. Before your time runs out, I want to get your response to an exchange I had with your opposing counsel about the meaning of this paragraph at SCR 79 in the stricken brief. He argued that I misread this sentence as extending to the objects of the offense that in fact, it meant the substantive counts that were objects, which would narrow it to just the, you know, just the counts that were the subject of the prior discussion. Right. He's completely wrong. And I'd like to take you to understand page 79. I'd like to take you back to 76, SCR 76. Roman numeral A, the first argument is A, that the court should dismiss the substantive honor services charges in two through 12. That's A. Now we move to page 79, which is B. The heading is the court should dismiss the conspiracy charge in count one for failing to allege the requisite willfully and corruptly mens rea, which require knowledge of illegality. And the argument then goes on to say that it's, you know, that the count one chart is a conspiracy with two objects. It's well established that the is an element of the conspiracy. And then the argument is that the 1347 prong requires a willfully mens rea and the honor services prong requires a corruptly mens rea. And therefore the count one is deficient. So it is specifically arguing the argument that we're making now, which is that count one, the conspiracy for the 1347 prong does not allege the willfully mens rea. Now to get back to the issue about whether that brief was stricken, the government says, look at 646 of the supplemental excerpts, but then it doesn't tell you to go on to look to 647. After the district court strikes the brief, defense counsel says, well, hold on a second. You already ruled on the merits that the indictment sufficiently alleged the mens rea. So isn't it really essentially moot? And the court says, yes, I agree. I ruled on the merits. It agrees with defense counsel. In addition, he argued at the hearing, nobody struck those arguments, the exact same argument that count one didn't allege. Can I ask, did the district court issue like a pre-trial order that set a firm deadline that all motions, pre-trial motions shall be filed by X date? No, it did not. And there was a continuing motion hearings after motion hearings. And in addition, this was because as I read rule 12, if the district court doesn't explicitly set a pre-trial motions cutoff date, then the deadline is trial. Correct. And what happened in this case is there was an initial motion hearing date, but there was never an order. You can't file any motions ever again for the remainder of the case. And these motions were filed more than 16 months before the trial. The government got up here and said on the eve of trial, this was more than a year before the trial. Then why was it considered untimely? I have no idea because the government knew that the indictment was defective, I guess, and we're trying to scramble to get around. The only way that it could be untimely is if the court had issued an order that related to the timeliness of these types of motions, no? Yeah, there was, it was more than timely. I mean, this was more than a year before the trial. I mean, to somehow say that this was a waiver or forfeiture of constitutional rights, the constitutional right to have a valid indictment under the Fifth Amendment, when a pre-trial motion is made more than 16 months before the trial, that the indictment is missing the critical mens rea element of the offense, that somehow that's been waived or forfeited, I mean, it just, that to me would be just an unprecedented application of forfeiture and waiver doctrine. There was a point at which the district court said you can't keep throwing out new legal theories, and I don't remember exactly when on the record the court mentioned this, I think at a hearing. That would suggest to me that there was supposed to be some sort of orderly process by which things should be put on paper and was chiding defense for continuing to throw out new theories beyond that point in time. Yeah, I think the district court did get frustrated, obviously, but let's, this is a complicated case. It's a complicated indictment. We're dealing with an area that is, you know, is developing as we've seen, even in the course of this appeal, these are complicated issues and the defense is doing the best they can to raise these issues before trial. That's the whole point, right? Let's give everybody notice of what the issues are so that if there is a problem with the indictment, government, you can go and correct it. Let's, let's step back and remember what is the point of forfeiture and waiver doctrine? It's sandbagging and not giving the government or the district court enough time to deal with the issue. That's the essence of the doctrine. Here, they had plenty of time to deal with the issue. They had more than 16 months to deal with the issue. It was very clear that the indictment did not allege the willfully mens rea. And now to come up here, and again, post-trial, they agreed that an adequate pretrial motion was made. And now to scramble at the last second, if anyone's doing something at the eve of anything, it's the government who's making this new waiver argument for the first time on appeal. They, they waived it below. I mean, you know, everybody had adequate notice of this defect in the indictment. All right. Thank you, counsel. Um, I, court thanks both sides for their very helpful arguments in this interesting case. And the case just argued will be submitted and we stand in recess for today. Okay. All rise. This court for this session stands adjourned.
judges: TASHIMA, COLLINS, SANCHEZ